1

2

3

4

5

6

7

8

9                   IN THE UNITED STATES DISTRICT COURT

10                      FOR THE DISTRICT OF OREGON

11  GREGORY PARK, YONG HO PARK,  )
    DONG YEON PARK, JUNG HYUN    )
12  PARK,                        )
                                 )
13              Plaintiffs,      )
                                 )    No.  CV-05-647-HU
14       v.                      )
                                 )
15  ALBERTO GONZALEZ, U.S. Attor-)
    ney General, MICHAEL CHERTOFF,)
16  Secretary of Department of   )
    Homeland Security, WILLIAM   )
17  MCNAMEE, District Director of )
    United States Citizenship and )
18  Immigration Services, Depart- )
    ment of Homeland Security,    )
19  PORTLAND DISTRICT DIRECTOR OR )    OPINION & ORDER
    OFFICER IN CHARGE, IMMIGRATION)
20  & CUSTOMS ENFORCEMENT, or the )
    person whom has immediate     )
21  custody and control over      )
    plaintiffs, Yong Ho Park, Dong)
22  Yeon Park, and Jung Hyun Park,)
    and CONDOLEEZA RICE, United   )
23  States Secretary of State,    )
                                  )
24              Defendants.       )
                                  )
    _____
25
    David N. Shomloo
26  Attorneys at Law
    222 N.W. Davis, Suite 402
27  Portland, Oregon 97209
28       Attorney for Plaintiffs

    1 - OPINION & ORDER

Karin J. Immergut
UNITED STATES ATTORNEY
Kenneth C. Bauman
ASSISTANT UNITED STATES ATTORNEY
United States Attorney's Office
District of Oregon
1000 S.W. Third Ave., Suite 600
Portland, Oregon 97204-2902

      Attorneys for Defendants

HUBEL, Magistrate Judge:

      Plaintiffs Gregory Park, Yong Ho Park, Dong Yeon Park, and
Jung Hyun Park, bring this action challenging the revocation and
destruction of an Immigration Form I-130, filed by Gregory Park on
July 7, 1987.  The facts and claims are discussed in more detail
below.

      Plaintiffs move for summary judgment and defendants move to
dismiss, or alternatively for summary judgment.  All parties have
consented to entry of final judgment by a Magistrate Judge in
accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. §
636(c).  For the reasons discussed below, I deny plaintiffs' motion
and grant defendants' alternative motion for summary judgment.

                              BACKGROUND

      The parties filed a Joint Concise Statement of Material Facts,
along with documents supporting each statement of fact.  I outline
the relevant facts here.

      On July 7, 1987, naturalized United States citizen Gregory
Park filed a "Petition for Alien Relative, Immigration Form I-130"
(hereinafter referred to as "PAR-Form I-130"), with the former
Immigration and Naturalization Service (INS), which, for the
purposes of this litigation was acting for named federal employees
sued in their official capacities or their predecessors (defendants

2 - OPINION & ORDER

Gonzalez, Chertoff, McNamee, and Rice).  The beneficiary of the PAR-Form I-130 was Gregory Park's brother, Yong Ho Park.  Sometime after July 7, 1987, but before May 9, 1997, the immigration service approved the PAR-Form I-130.

Yong Ho Park married Dong Yeon Park on September 26, 1991. Their daughter, Jung Hyun Park, was born June 29, 1994.  All three are citizens and nationals of South Korea.  Under 8 U.S.C. § 1153(d), Dong Yeon Park and Jung Hyun Park would be derivative beneficiaries of any immigration status awarded to Young Ho Park.

In 1994, Yong Ho Park and his family were living in Pucheon, South Korea.  A letter dated May 20, 1994, was sent to Yong Ho Park by the State Department to an out-of-date address.  However, sometime in 1995, Yong Ho Park's sister brought the letter to his attention.

In 1997 or 1998, Yong Ho Park and his family moved from Pucheon, South Korea, to Sanborn, South Korea.  A letter dated May 9, 1997, was sent to Yong Ho Park by the State Department, to the same out-of-date address used in the May 1994 letter.  Nonetheless, plaintiff saw the 1997 letter sometime within one year of its date. The letter notified Yong Ho Park that he had a "priority date" of July 7, 1987.  Yong Ho Park did not respond to the May 9, 1997 letter.  At that time, Yong Ho Park was not interested in immigrating to the United States.

The State Department sent Yong Ho Park another letter, this one dated May 6, 1998, which Yong Ho Park saw sometime in 1998. The letter informed Yong Ho Park that in May 1997, the State Department had informed Yong Ho Park of the necessary steps for him to prepare for an appointment to file a formal application for an

3 - OPINION & ORDER

immigrant visa and that Yong Ho Park had not yet responded to that letter.

The May 6, 1998 letter then informed Yong Ho Park that if he had not yet responded to the May 1997 notice, but still wished to pursue his immigrant visa application, he had to contact the Consular Section of the United States Embassy in Seoul, immediately.  The letter expressly stated that completing the steps was mandatory for the filing of an application at the time of interview and no visa could be issued unless the steps were completed.

This May 1998 letter continued:

> Section 203(g) of the Immigration and Nationality Act requires the Secretary of State to terminate the registration of any alien who fails to apply for an immigrant visa within one year following notification of the availability of a visa number.  THIS LETTER SHALL SERVE AS YOUR NOTIFICATION THAT A VISA NUMBER IS CURRENTLY AVAILABLE.  FAILURE TO PURSUE YOUR VISA APPLICATION BY COMPLYING WITH THE INSTRUCTIONS BELOW WILL COMMENCE PROCEEDINGS TO TERMINATE YOUR IMMIGRANT VISA REGISTRATION ONE YEAR FROM THE DATE OF THIS LETTER.

Exhs. to Joint Concise Stmt of Facts at p. 5.

The following year, the State Department sent a letter dated May 6, 1999, to Yong Ho Park advising him that his PAR-Form I-130 had been cancelled because he had not applied for his immigrant visa within one year of being advised to do so.  The letter further advised Yong Ho Park that his right to apply for an immigrant visa could be reinstated and the PAR-Form I-130 revalidated within one year under certain specified circumstances.

A letter dated May 8, 2000, was sent to Yong Ho Park by Rice's predecessor, advising him that his "application for an immigrant visa was cancelled and any petition was also cancelled." Id. at p.

4 - OPINION & ORDER

1  102. This letter also informed Yong Ho Park that the record of his
2  application had been destroyed and any petition approved on his
3  behalf had been returned to the INS.  Id.

4      It appears that on May 9, 2001, the PAR-Form I-130 was
5  destroyed.  The act was memorialized on May 10, 2004, in a document
6  entitled "Consular Return/Case Transfer Cover Sheet."  Id. at p.
7  96.  The form was issued by the United Stated Embassy in Seoul.  It
8  states "subject petition was destroyed under INA Section 203(g) on
9  May 9, 2001."  Id.

10     Yong Ho Park, Dong Yeon Park, and Jung Hyun Park never applied
11  for an immigrant visa with the United States Embassy in Seoul.

12     On July 30, 2003, Yong Ho Park entered the United States on a
13  non-immigrant B-2 visa at San Francisco, California.  His B-2 visa
14  was valid until January 29, 2004.[1]

15     On August 4, 2003, Dong Yeon Park and Jung Hyun Park entered
16  the United States on non-immigrant B-2 visas at San Francisco,
17  California.  Their visas were valid until February 2, 2004.
18  Thereafter, Yong Ho Park, Dong Yeon Park, and Jung Hyun Park began
19  living in Corvallis, Oregon.

20     On March 27, 2004, Yong Ho Park, Dong Yeon Park, and Jung Hyun
21  Park filed an Application to Register Permanent Residence or Adjust

22

23

24     [1]  The Joint Concise Statement of Material Facts states that
   "Plaintiff Dong Yeon Park's visa was valid until January 29, 2003
25  (pp. 6-7, 85)."  Joint Concise Stmt of Facts at p. 4.  The
   context makes clear that the reference to Dong Yeon Park is an
26  error and the proper reference should be to Yong Ho Park.  This
   is confirmed by referring to pages 6, 7, and 85 of the exhibits
27  attached to the Joint Concise Statement of Facts.  The context
   and the actual exhibit pages also confirm that the visa was valid
28  until January 29, 2004, not 2003.

Status, Immigration Form I-485, with the immigration service. These applications were based on the PAR-Form I-130. The applications were accompanied by an affidavit of support by Gregory Park (Immigration Form I-864), with the appropriate supporting financial forms attached.

On July 8, 2004, Yong Ho Park, Dong Yeon Park, and Jung Hyun Park appeared before an immigration service employee for an interview in Portland, in connection with their pending Application to Register Permanent Residence or Adjust Status, Immigration Form I-485.

In a letter dated October 26, 2004, immigration service officials advised Yong Ho Park, Dong Yeon Park, and Jung Hyun Park that their Applications to Register Permanent Residence or Adjust Status, Immigration Form I-485, were being denied because the PAR-Form I-130, had been revoked on May 9, 2001.

On January 12, 2005, immigration service officials issued Notices to Appear (NTA) to Yong Ho Park, Dong Yeon Park, and Jung Hyun Park, advising them that they were subject to removal from the United States to South Korea because they had stayed longer than permitted on their visas.

DISCUSSION

I.  Plaintiffs' Claims

In their Second Amended Complaint, plaintiffs assert claims based on the revocation and destruction of the PAR-Form I-130 by defendants and based on the acts of immigration officials in instituting removal proceedings against them.  Plaintiffs contend that the revocation of the PAR-Form I-130 is not authorized by statute or regulation.  They seek a declaration that the revocation

6 - OPINION & ORDER

of the approved PAR-Form I-130 was unlawful.  They also seek an order requiring the reinstatement of the approved PAR-Form I-130.

Additionally, plaintiffs seek a temporary restraining order requiring defendants to hold the removal proceedings initiated in January 2005, in abeyance pending resolution of this litigation. However, on November 10, 2005, Immigration Judge Michael Bennett dismissed the removal proceedings against Yong Ho Park, Dong Yeon Park, and Jung Hyun Park, apparently mooting this request.  Thus, the claims remaining at issue concern the revocation of the PAR-Form I-130.

II.  Statutory Overview

As explained by defendant, and not contested by plaintiff, a PAR-Form I-130 is a petition filed by a United States citizen or lawful permanent resident alien, asking the immigration service[2] to confirm a relationship between a spouse, child, parent, brother, or sister.  See 8 U.S.C. §§ 1154(a)(1)(A)(i), 1154(b), 8 C.F.R. § 204.1(a).  The PAR-Form I-130 alone does not confer an immigration benefit allowing an alien to be legally admitted to the United States, nor does it confer authority for an alien to legally stay in the United States.  Its purpose is to establish a legal, valid relationship between the petitioner and the designated alien

---

[2]   The official entity was previously known as the Immigration and Naturalization Service (INS).  In March 2003, the Department of Homeland Security took over the INS and the agency changed its name to the United States Citizenship and Immigration Service (CIS).  To avoid confusion, I refer to "immigration service" generically, intending to refer to either the INS or the CIS, whichever entity existed at the time under discussion.

7 - OPINION & ORDER

beneficiary.[3]

Once the PAR-Form I-130 is approved, the intended alien beneficiary may file an "Application to Register Permanent Residence or Adjust Status, Immigration Form I-485" with immigration services if the intended alien beneficiary of the PAR-Form I-130 resides in the United States.  If the intended alien beneficiary of the PAR-Form I-130 resides outside of the United States, immigration services will forward an approved PAR-Form I-130 to the State Department.  In that case, the intended alien beneficiary must apply for an immigrant visa at a consular office in the intended alien beneficiary's local United States Embassy.  An immigrant visa, issued by the State Department, gives a designated alien beneficiary residing outside the United States the legal authority to immigrate to the United States as a lawful permanent resident.

Allocation of immigrant visas is governed by 8 U.S.C. § 1153.  Subsection (a) sets forth preference allocations for family-sponsored immigrants, with brothers and sisters of citizens ranked fourth out of four categories.  8 U.S.C. § 1153(a)(4).  Brothers and sisters of citizens are to be allocated visas in a number not to exceed 65,000.  Id.

The Secretary of State has the authority to issue regulations regarding any waiting lists of applicants for visas under 8 U.S.C.

---

[3]  See http://www.uscis.gov/graphics/formsfee/forms/i-130.htm (defining purpose of form I-130 as "A citizen or lawful permanent resident of the United States may file this form to establish the relationship to certain alien relatives who wish to immigrate to the United States. A separate form must be filed for each eligible relative.").

8 - OPINION & ORDER

§ 1153.  8 U.S.C. § 1153(e)(3).  Immigrant visas made available under 8 U.S.C. § 1153(a), "shall be issued to eligible immigrants in the order in which a petition in behalf of each immigrant is filed with the Attorney General."  8 U.S.C. § 1153(e)(1).  The consular officer may not grant an immigrant visa for a sibling of a citizen described in section 1153(a)(4) until authorized to do so by the Attorney General under 8 U.S.C. § 1154 which governs the process for petitioning for confirmation of the relationship.  See 8 U.S.C. §§ 1154(a)(1)(A)(i), 1154(b), 8 C.F.R. § 204.1(a).

Subsection 1153(g) gives the Secretary of State additional authority to estimate anticipated numbers of visas and requires the Secretary to terminate the registration of an alien who fails to timely apply for an immigrant visa.  The subsection provides in full:

> For purposes of carrying out the Secretary's responsibilities in the orderly administration of this section, the Secretary of State may make reasonable estimates of the anticipated numbers of visas to be issued during any quarter of any fiscal year within each of the categories under subsections (a), (b), and (c) of this section and to rely upon such estimates in authorizing the issuance of visas.  The Secretary of State shall terminate the registration of any alien who fails to apply for an immigrant visa within one year following notification to the alien of the availability of such visa, but the Secretary shall reinstate the registration of any such alien who establishes within 2 years following the date of notification of the availability of such visa that such failure to apply was due to circumstances beyond the alien's control.

8 U.S.C. § 1153(g).

"Registration" as used in subsection 1153(g), is currently defined as follows:  "The alien shall be considered to be registered for the purposes of . . . and [8 U.S.C. § 1153(g)] upon the filing of Form DS-230, when duly executed, or the transmission

9 - OPINION & ORDER

1  by the Department to the alien of a notification of the
2  availability of an immigrant visa, whichever occurs first."  22
3  C.F.R. § 42.67(b).

4      Termination of a registration by the Secretary of State under
5  section 1153(g) is grounds for automatic revocation of PAR-Form I-
6  130.  8 C.F.R. § 205.1(a)(1).  Absent termination, the approved
7  PAR-Form I-130 remains "valid for the duration of the relationship
8  to the petitioner and of the petitioner's status as established in
9  the petition."  8 C.F.R. § 204.2(h)(1).

10     Summarizing this present statutory scheme, a citizen may apply
11 for confirmation of a relationship with a sibling using a PAR-Form
12 I-130 which, if approved by the Attorney General, allows the
13 beneficiary of such citizen to file either an "Application to
14 Register Permanent Residence or Adjust Status, Immigration Form I-
15 485" if the beneficiary resides in the United States, or apply for
16 an immigrant visa at a consular office in the beneficiary's local
17 United States Embassy, if the beneficiary resides outside the
18 United States.

19     Here, because Yong Ho Park resided in South Korea at the time
20 the PAF-Form I-130 was approved, the State Department received his
21 PAF-Form I-130 from the Attorney General and it was incumbent on
22 Yong Ho Park, if he desired to immigrate to the United States, to
23 apply for an immigrant visa at the United States Embassy in Seoul.

24     Given the prioritization of visas under section 1153, and the
25 accompanying creation of waiting lists, a beneficiary of a PAR-Form
26 I-130 has no apparent duty to apply for an immigrant visa until he
27 or she receives notice from the Secretary of State that a visa is
28 available.  Once such notice is received, however, the beneficiary

10 - OPINION & ORDER

is obligated to follow through on the immigrant visa application process within one year or risk termination of the beneficiary's registration.  Should the registration be terminated, the PAR-Form I-130 is automatically revoked.

III.  Discussion

Plaintiffs contend that defendants violated plaintiffs' due process rights by improperly interpreting 8 U.S.C. § 1153(g) to destroy and revoke their approved PAR-Form I-130, which revocation then caused the immigration service to declare that plaintiffs were not entitled to an adjustment of status.

Specifically, plaintiffs contend that the statute may not be reasonably interpreted to include giving defendants the authority to destroy petitions or supporting documents upon the termination of registration for an immigrant visa.  Plaintiffs contend that if Congress intended defendants to have the authority to destroy and revoke an approved PAR-Form I-130 for failure to register an immigrant visa, Congress would have stated so in 8 U.S.C. § 1153(g).

For the reasons explained below, I agree with defendants that they acted within the bounds of Congressional authority in terminating Yong Ho Park's visa registration, and then automatically revoking his PAR-Form I-130.

A.  Termination of Registration

The current statutory scheme is explained above.  In addition to the statutes and regulations discussed there, I note that under 8 U.S.C. § 1201(b), each alien who applies for a visa "shall be

11 - OPINION & ORDER

registered in connection with his application."[4]    In the most straightforward context, this statute is easily understood as covering the situation where a person desiring to immigrate to the United States submits an actual visa application and then, a State Department employee assigns a registration number or other registration identifier to that application.

In such a context, the other statutes and regulations at issue in this case follow quite naturally. There has been an application with a DS-230 and thus, the applicant has been registered. The applicant is then notified when a visa becomes available and is given a one-year time period to proceed with the application. Should the applicant fail to timely proceed with the application, the Secretary of State must terminate the registration of the alien's application. 8 U.S.C. § 1153(g). Termination of a registration which occurred upon the filing of a DS-230 is easily understood as "un"-registering the alien as an applicant for a visa.

In this case, Yong Ho Park apparently never actually "applied" for a visa in the sense that he did not file a DS-230 and thus, did not trigger a "registration" of a visa "application" under 8 U.S.C. § 1201(b) and thus, was not considered "registered" for purposes of 8 U.S.C. § 1153(g) by virtue of having filed such a form. Instead, Yong Ho Park's immigration process was initiated by the confirmation of the PAR-Form I-130 and its transfer to the United

---

[4]    The application consists of completing and filing Department of State Form DS-230.  See 22 C.F.R. § 42.67(b) (referring to the registration of an alien for purposes of 8 U.S.C. § 1201(b) upon the filing of Form DS-230, when duly executed).

States Embassy in Seoul, South Korea.

The language of 8 U.S.C. § 1153(g), its legislative history, and the later enactment of the 2002 definition of "registration," show that the easily understood process of "applying" for a visa and becoming "registered" under 8 U.S.C. § 1201(b) by filing a DS-230, is not the only way to be considered "registered."

8 U.S.C. § 1153(g) itself implies the "registration" of an alien without an "application" for a visa. It states, in pertinent part, that "[t]he Secretary of State shall terminate the registration of any alien who fails to apply for an immigrant visa within one year following notification to the alien of the availability of such visa, . . . " 8 U.S.C. § 1153(g). If the Secretary of State is required to terminate the registration of an alien who has failed to timely <u>apply</u> for a visa, then, quite plainly, the fact of "registration" has occurred absent a visa application.

As defendants note, the authority to terminate immigrant registrations was vested in the Secretary of State by Congress in 1965. At that time, Congress created a provision appearing at 8 U.S.C. § 1153(e) which allowed for discretionary termination of immigrant registrations: "The Secretary of State, in his discretion, may terminate the registration on a waiting list of any alien who fails to evidence his continued intention to apply for a visa in such manner as may be by regulation prescribed." Immigration & Nationality Act Amendments, Pub. L. No. 89-236, 79 Stat. 911 (1965). This initial version of the statute also implies that the fact of registration may occur independent of an act of application. Obviously, there has to have been some indication of

13 - OPINION & ORDER

an intent to apply for a visa, but the fact that the Secretary of State could terminate the registration of an alien who failed to show a continued intention to apply suggests that the application is not a prerequisite to registration or that registration can be accomplished without an application, at least when "application" is understood in the ordinary sense.

In 1976, Congress amended the statute to make the termination mandatory, based on concerns that the Secretary of State had exercised the discretionary authority to terminate registrations "very infrequently."   H.R. Rep. No. 94-1553, at 14 (1976), reprinted in 1976 U.S.C.C.A.N. 6073, 6086.

The House Report incorporated comments made by the State Department in regard to the bill which became the 1976 law.  Id. at 16, 1976 U.S.C.C.A.N. at 6088.  The State Department noted that "[t]he issue of registrants on immigrant visa waiting lists . . . who do not pursue their applications when given an opportunity to do so is a long-standing and difficult one."  Id. at 23, 1976 U.S.C.C.A.N. at 6095.  The State Department remarked that the "presence of such applicants on waiting lists adds to the recordkeeping and other administrative burdens on consular offices abroad and can create false impressions of the magnitude of active demand for immigration."  Id.

The State Department expressed that it was "sympathetic with the objective of this proposed amendment."  Id.  However, the State Department also expressed its preference for an administrative procedure of separating all pending immigrant visa applications into distinct active and inactive categories.  Id.  The State Department believed that this procedure could achieve the goal

14 - OPINION & ORDER

1  Congress was seeking, but without physical destruction of records

2  and associated documents, nor the loss by an alien of any

3  entitlement under the law.  Id. at 23-24, 1976 U.S.C.C.A.N. at

4  6095-96.  Congress obviously preferred the language it adopted and

5  rejected the State Department's approach.

6      This legislative history reveals both Congress's intent to

7  place the burden of proceeding with an immigrant visa application

8  on the alien applicant and the intended solution to the

9  longstanding concern with the maintenance of files on prospective

10 immigrants.

11     In 1990, section 1153(e)'s termination provision was moved to

12 section 1153(g).  Pub. L. 101-649, §§ 111, 162, 104 Stat. 4978

13 (1990).  Renumbered, the provision read:

14     The Secretary of State shall terminate the registration
       of any alien who fails to apply for an immigrant visa
15     within one year following notification to the alien of
       the availability of such visa, but the Secretary shall
16     reinstate the registration of any such alien who
       establishes within 2 years following the date of
17     notification of the availability of such visa that such
       failure to apply was due to circumstances beyond the
18     alien's control.

19 Id.  Notably, the language implying that a registration occurs

20 absent a formal application for a visa remained unchanged from the

21 version originally enacted in 1965.  The statute remains unchanged

22 to this date.

23     Following the 1976 change in the law by Congress to make the

24 registration termination mandatory, the State Department

25 promulgated a rule incorporating the statutorily mandated

26 termination of registration.  Originally adopted as 22 C.F.R. §

27 42.65, it stated that

28     [a]n alien's registration on an immigrant visa waiting

15 - OPINION & ORDER

1
2
3
4

> list shall be terminated if he shall have failed to respond within one year to a notification sent subsequent to January 1, 1977 from a consular officer to prepare for final action on his application for an immigrant visa or if he shall have failed to apply for an immigrant visa within one year following the scheduling of an appointment for final interview.

5  41 Fed. Reg. 54928 (Dec. 16, 1976).

6       By 1987, the rule had changed slightly and stated:   "An
7  alien's registration on an immigrant visa shall be terminated if
8  the applicant shall have failed to apply for an immigrant visa
9  within one year following the scheduling of an appointment for a
10 final interview."  22 C.F.R. § 42.65(a) (1987).   Importantly, the
11 rule, like the statute, contemplates that registration occurs
12 independent of the act of application.

13      Later in 1987, the rule was renumbered from 22 C.F.R. § 42.65
14 to 22 C.F.R. § 42.83.  See 52 Fed. Reg. 42590 (Nov. 5, 1987).  The
15 renumbering was accompanied by a few grammatical changes, but the
16 substance of the rule remained intact.

17      The rule underwent another change in 1991, following changes
18 made to the Immigration and Nationality Act by the Immigration Act
19 of 1990.  56 Fed. Reg. 49678 (Oct. 1, 1991).  The change, made to
20 subsection 42.83(a), replaced the former language quoted above with
21 the following:   "In accordance with INA 203(g), an alien's
22 registration for an immigrant visa shall be terminated if, within
23 one year after transmission of a notification of the availability
24 of an immigrant visa, the applicant fails to apply for an immigrant
25 visa."  Id.

26      Though characterized as a substantive change, it is obvious
27 that the change was limited.  Both the prior rule and the rule
28 adopted in 1991 still place the burden of action on the applicant

16 - OPINION & ORDER

1  and provide for termination of registration if the applicant fails

2  to timely act.

3      As explained in the Federal Register:

> Section 42.83 has been substantively as well as
> editorially amended. The Immigration Act of 1990, in
> restructuring INA 203, among other things redesignated as
> subsection (g) the provision relating to termination of
> registration, currently in paragraph (e) of this section.
> The revised regulations reference the new designation of
> the underlying statutory authority for terminating a
> registration. The change, although somewhat substantive
> is basically procedural and is designed to benefit the
> applicants. Under standard procedures, an applicant is
> requested to obtain the necessary documents to apply
> formally for a visa only when it appears that a visa
> number may become available within the following six
> months for persons with the applicant's priority date.
> The notice also instructs the applicant to notify the
> consular officer when the alien has complied with all the
> requirements therein. An appointment for an interview is
> customarily sent only upon receipt of the applicant's
> response and the allocation of a visa number for the
> purpose of visa issuance.
> Some applicants have taken advantage of those procedures
> to delay their response to the initial instruction for
> several years, thereby negating the intent of INA 203(g).
> In order to further the intent of that section, the
> current regulation in § 42.83(a) requires the applicant
> to respond to a notice to appear at the consular office.
> This procedure has proven confusing to some applicants
> (inasmuch as they have not indicated to the consular
> office a readiness to apply for a visa), is clearly an
> inconvenience, and is not necessary for compliance with
> the law.
> In the revised regulation to this rule, the consular
> office will simply notify the applicant in writing that
> an immigrant visa number is available and put the
> applicant on notice that termination procedures will
> commence if no action is taken to obtain a visa within
> one year from the date of the letter. From the standpoint
> of the applicant, this eliminates the unnecessary and
> confusing step of visiting the consular office unprepared
> to apply formally for an immigrant visa and yet provides
> an appropriate alert to statutory requirements.

25  Id.  The current version of 22 C.F.R. § 42.83 is the same as the

26  one adopted in 1991.

27      Even before Gregory Park filed the PAR-Form I-130 on behalf of

28  Yong Ho Park in July 1987, the relevant statute and rule provided

17 - OPINION & ORDER

1   for termination of the registration of an alien who failed to

2   timely apply for a immigrant visa, indicating that the

3   "registration" referred to first in section 1153(e) and later in

4   section 1153(g), did not require an actual application for a visa

5   as a prerequisite. Accordingly, the registration to be terminated

6   for failure to timely apply for an immigrant visa has always

7   included a "registration" accomplished by some other means in

8   addition to the registration accomplished by the filing of a visa

9   application with a DS-230 under 8 U.S.C. § 1201(b).

10      Based on the plain language of section 1153(g) and its

11  history, it is clear that Congress has authorized the termination

12  of an alien's registration for failure to timely apply for an

13  immigrant visa following notification of visa availability since

14  1965. Congress made such termination mandatory in 1976.

15      In a recent case, the Ninth Circuit reiterated the familiar

16  two-step approach for courts to evaluate agency regulations

17  promulgated pursuant to statute, announced by the Supreme Court in

18  Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,

19  467 U.S. 837 (1984):

20      "When a court reviews an agency's construction of the
        statute which it administers, it is confronted with two
21      questions. First, always, is the question whether
        Congress has directly spoken to the precise question at
22      issue. If the intent of Congress is clear, that is the
        end of the matter; for the court, as well as the agency,
23      must give effect to the unambiguously expressed intent of
        Congress. If, however, the court determines Congress has
24      not directly addressed the precise question at issue, .
        . . the question for the court is whether the agency's
25      answer is based on a permissible construction of the
        statute."
26
    Miranda Alvarado v. Gonzales, 449 F.3d 915, 920-21 (9th Cir. 2005)
27
    (quoting Chevron, 467 U.S. at 842-43).
28

    18 - OPINION & ORDER

1    Here, I conclude that the State Department regulation
2    regarding termination of registration gives effect to Congress's
3    clearly expressed intent in section 1153(g) regarding
4    "registration" of an alien and the termination of such
5    registration. Alternatively, I conclude that the State
6    Department's interpretation as found in its regulation is a
7    permissible construction of the statute.

8         B. Revocation and Destruction of PAR-Form I-130.

9         8 C.F.R. § 205.1(a) provides for the automatic termination of
10   petitions made under 8 U.S.C. § 1154, in a variety of
11   circumstances, including the death of the petitioner or the
12   beneficiary of the petition, the termination of the marriage on
13   which a spousal-preference petition is based, or upon a child
14   reaching age twenty-one when he or she has been accorded immediate
15   relative status under 8 U.S.C. § 1151(b). 8 C.F.R. § 205.1(a).

16        Under subsection (a)(1), when the Secretary of State
17   terminates a registration under section 1153(g), the immigration
18   service automatically revokes the approval of a petition made under
19   8 U.S.C. § 1154. This regulation, including the particular
20   provision regarding the Secretary of State's termination of a
21   registration, has existed since at least 1984. See 8 C.F.R. §
22   205.1 (1984). Since at least 1984, the regulation has cited
23   several sources of authority, including 8 U.S.C. §§ 1153, 1154,
24   1155. Id.

25        Plaintiffs argue that despite 8 C.F.R. § 205.1(a)(1),
26   defendants lack the authority to automatically revoke a section
27   1154 petition. Plaintiffs contend that there is no authority
28   anywhere in the Immigration and Nationality Act (INA) allowing the

19 - OPINION & ORDER

1  immigration service defendants to revoke an approved petition based

2  on the State Department's termination of registration.  Plaintiffs

3  argue that there is no support for either the State Department's

4  acts of revocation and destruction of the petition or such acts by

5  the immigration service defendants.

6      I disagree.  First, based on the stipulated facts and the

7  exhibits jointly submitted by the parties, the record shows that

8  plaintiff's PAR-Form I-130 was returned to the immigration service

9  in 2000.  Exhs. to Joint Concise Stmt of Facts at p. 102 (May 8,

10  2000 letter to Yong Ho Park stating that "the record of your

11  application has been destroyed and any petition approved on your

12  behalf has been returned to the Immigration and Naturalization

13  Service.") (emphasis added).  The reasonable implication created by

14  this letter is that it was the immigration service defendants who

15  revoked and destroyed the PAR-Form I-130 petition, not the State

16  Department.

17      As such, plaintiffs' argument should be directed to the

18  authority for 8 C.F.R. § 205.1(a)(1).  The legislative history of

19  section 1153(g), however, and the references to the concern with

20  the maintenance of files on prospective immigrants, is sufficient

21  to conclude, under Chevron, that the immigration service's

22  regulation requiring destruction of petitions after termination of

23  registration by the State Department, is a permissible

24  interpretation of the statute.

25      As mentioned above, Congress has long placed the burden of

26  proceeding with an immigrant visa application on the applicant.

27  When the applicant fails to proceed with the application process,

28  and a termination of registration follows, the applicant has

20 - OPINION & ORDER

effectively communicated his or her disinterest in being admitted
to this country in a preference category under section 1154(a).
The regulation regarding revoking and destroying a PAR-Form I-130
following the termination of registration is consistent with
Congress's intent as seen in section 1153(g) and is a permissible
interpretation of the statute.

Moreover, Congress enacted 8 U.S.C. § 1155, expressly giving
immigration service officials the authority to revoke the approval
of any previously approved petition for what officials deem to be
"good and sufficient" cause.   The regulation for automatic
revocation found in 8 C.F.R. § 205.1(a)(1) is a codification of
Congress's clearly expressed intent found in section 1155.

Even if the State Department was the agency that actually
revoked and destroyed the petition rather than the immigration
service, the act of doing so is similarly consistent with
Congress's intent and is a permissible interpretation of the
statute.  The alien's registration for a visa is already terminated
based on the alien's failure to proceed with the application
process and thus, the State Department no longer has a need to
maintain the petition in its files.

As explained above, under section 1153(g), the alien is given
notice of the availability of a visa and then given one year to
apply for the visa after receiving such notice before termination
of registration.   The alien is also given a two-year period
following the date of such notice to show that any failure to apply
was due to circumstances beyond the alien's control.  8 U.S.C. §
1153(g).  Upon such proof, the alien's registration is reinstated.
Id.

21 - OPINION & ORDER

1    The statute shows Congress's intent to protect the alien's

2  rights while providing for the agency's need to efficiently

3  maintain applications and records.    Clearly, Congress intended

4  termination of registration to have a practical effect on the

5  ability of an alien beneficiary to obtain an immigrant visa or it

6  would not have provided the protective system of notice, a one-year

7  period before termination, and an additional period in which

8  termination of registration may be overcome.    If termination had

9  no effect on the validity of a PAR-Form I-130, the State

10  Department's consular offices would have to maintain files in every

11  terminated case, even when the termination is based on the alien's

12  failure to obtain the visa based on the preference established in

13  the PAR-Form I-130.    When the alien fails to proceed with the

14  application process, revocation and destruction of the PAR-Form I-

15  130 is a permissible interpretation of the intent established in

16  section 1153(g).

17                              CONCLUSION

18    I grant defendants' motion for summary judgment (#31) and deny

19  plaintiff's motion for summary judgment (#33).

20    IT IS SO ORDERED.

21              Dated this  28th  day of  August      , 2006.

24                    /s/ Dennis James Hubel
                      Dennis James Hubel
25                    United States Magistrate Judge

22 - OPINION & ORDER